**Exhibit A**

**Lincoln Imports' Notice of Motion and Motion for
Sanctions for Special Happy's Violations of this Court's
October 5, 2010 Order Compelling Discovery**

Exhibits to Lincoln Imports' Motion for Sanctions page 1 of 768

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

SPECIAL HAPPY, LTD.,
    Plaintiff,

    vs.

LINCOLN IMPORTS LTD., INC.,
    Defendant.

LINCOLN IMPORTS LTD., INC.,
    Counter-Plaintiff,

    vs.

SPECIAL HAPPY, LTD.,
    Counter-Defendant.

Case No. 8:09-cv-09-00074-DOC-MLG
Judge David O. Carter

**DECLARATION OF THOMAS WARDEN IN SUPPORT OF LINCOLN IMPORTS' MOTION FOR SANCTIONS FOR SPECIAL HAPPY'S VIOLATIONS OF THIS COURT'S OCTOBER 5, 2010 ORDER COMPELLING DISCOVERY**

Pursuant to 28 U.S.C. § 1746, Thomas L. Warden declares as follows:

1.    I am a shareholder at the law firm of Conley Rose, P.C. and am counsel of record for Defendant Lincoln Imports Ltd., Inc. in the above captioned matter. I make this declaration based on personal knowledge and could competently testify to the facts stated herein if called upon to do so.

2.    Exhibit B attached to Defendant's Motion for Sanctions for Special Happy's Violations of this Court's October 5, 2010 Order Compelling Discovery ("Motion") is a true and correct copy of Plaintiff Special Happy Ltd.'s Complaint (Dkt. No. 1).

3.    Exhibit C attached to Defendant's Motion is a true and correct copy of Defendant Lincoln Imports Ltd., Inc.'s Counterclaim (Dkt. No. 12).

-1-

4.      Exhibit D attached to Defendant's Motion is a true and correct copy of United States Reissue Patent No. 36,640, entitled *Collapsible Christmas Tree Stand*, assigned to Lincoln Imports Ltd., Inc. (issued April 4, 2000) ("the '640 patent").

5.      Exhibit E1 attached to Defendant's Motion is a true and correct copy of Defendant's Motion to Compel Production of Documents and Information Responsive to Interrogatories and Requests for Production (Dkt. No. 26).

6.      Exhibit E2 attached to Defendant's Motion is a true and correct copy of the document filed as Joint Stipulation Under Local Rule 37-2 (Dkt. No. 27).

7.      Exhibit E3 attached to Defendant's Motion is a true and correct copy of the Declaration of Thomas Warden in Support of Defendant's Motion to Compel (Dkt. No. 28).

8.      As further discussed below, Exhibits F-R attached to Defendant's Motion are true and correct copies of the results of Lincoln Import's investigation during late October and November 2010 concerning Special Happy's sales and shipments of artificial Christmas trees within the United States.  In particular:

Exhibit F, Special Happy Disclosure Summary, is a summary of the results of Lincoln Imports investigation compared to Special Happy's combined disclosures during discovery and in response to this Court's

-2-

Exhibits to Lincoln Imports' Motion for Sanctions page 3 of 768

Order of October 5, 2010 compelling production.  Exhibit F is filed separately under seal.

Exhibit G, Special Happy Largest Customers, is a true and correct summary of shipments made by Special Happy to its United States customers since July 1, 2007, sorted by the total weight of shipments for each customer, as obtained from the data in Exhibit H..

Exhibit H, Special Happy Shipments by Customer, is a true and correct copy of the shipments by Special Happy since July 1, 2007 to its United States customers, including the date of each shipment, the cartons in each shipment, and the weight of each shipment, as obtained by Lincoln Imports from public shipping records on October 20, 2010.

Exhibit I, Special Happy Total Sales Estimates, is an estimate of total infringing trees shipped by Special Happy into the United States since January 1, 2003 and July 1, 2007, using the data provided by Exhibits H and J.

Exhibit J, Special Happy Tree Weight Analysis, is a true and correct summary of the only complete shipping record provided by Special Happy in this action, which summarizes the weight and quantity of trees over four feet in height.  Exhibit J is filed separately under seal.

-3-

Exhibits to Lincoln Imports' Motion for Sanctions page 4 of 768

Exhibit K, Special Happy Tree Stand Designs, is a true and correct summary of each tree stand design disclosed by Special Happy in this action and as shown in Lincoln Imports' investigation.  Exhibit K is redacted to omit Special Happy product identification numbers.

Exhibit L, Santa's Own Products, is a true and correct summary of product displayed on the Internet website of ATP Leisure, LLC d/b/a Santa's Own ("Santa's Own") (www.santasown.com) in late October and early November 2010.

Exhibit M, Santa's Own Tree Stand Instructions, is a true and correct copy of a documents obtained from Santa's Own website in October 2010.

Exhibit N, Direct Export Products, is a true and correct copy of photographs of products sold by Direct Export Co. ("Direct Export") and a summary thereof, as obtained in late October and early November 2010 from Internet merchants offering such products for sale, including www.christmas-decorations-gifts-store.com, www.kinkadestudios.com, and www.moderndisplay.com.  Exhibit N is filed separately under seal.

Exhibit O, Vickerman Products, is a true and correct copy of photographs of products sold by Vickerman Co. and a summary thereof, as obtained in late October and early November 2010 from www.vickerman.com.

-4-

Exhibit P, Allstate Products, is a true and correct copy of photographs of products sold by Allstate Floral & Craft, Inc. ("Allstate") and a summary thereof, as obtained in late October and early November 2010 from Allstate catalogs produced in response to a subpoena served by Lincoln Imports, and from Internet merchants offering such products for sale, including www.1888flowermall.com and www.e-silkflowerdepot.com. Exhibit P1 is a true and correct copy of a Special Happy Receiving Report included in document production from Allstate received on August 1, 2010 in response to a subpoena *duces tecum* served by Lincoln Imports. Exhibits P and P1 are filed separately under seal.

Exhibit Q, Kurt S. Adler Products, is a true and correct copy of photographs of products sold by Kurt S. Adler and a summary thereof, as obtained in late October and early November 2010 from Internet merchants offering such products for sale, including www.kurtadler.com and www.lnt.com.

Exhibit R, Other Special Happy Customers' Products, is a true and correct copy of photographs of products sold by Bronners Christmas Wonderland, Good Tidings (Commerce Corp.), and Sterling, Inc., and a summary thereof, as obtained in late October and early November 2010

-5-

from Internet merchants offering such products for sale, including www.bronners.com, www.commercecorp.com, and www.sterling-inc.com.

9.     Exhibit S attached to Defendant's Motion is a true and correct copy of Special Happy Supplemental Discovery Responses dated October 15, 2010. Exhibit S1, which is filed separately under seal, is a true and correct copy of Exhibit A thereto.

10.     Exhibit T attached to Defendant's Motion is a true and correct copy of 7 MOORE'S FED. PRAC. — CIV. § 37.50[1] (3d ed. 2010).

11.     Exhibit U attached to Defendant's Motion is a true and correct copy of Defendant's Supplemental Interrogatory Answers dated September 15, 2010.

12.     The Exhibits attached to Defendant's Motion are excerpted and highlighted as appropriate.

13.     During regular discovery in this action, Lincoln Imports requested technical and sales information regarding all of Special Happy's potentially infringing trees which included a collapsible Christmas tree stand (as claimed by the '640 patent).  (Ex. E2, Joint Stipulation Under Local Rule 37-2.)  In response, Special Happy produced only 52 total pages of documents indicating that it made only very limited sales of potentially infringing products, and even then, only in 2007 and 2008.  (*Id*.)  In particular, Special Happy produced only three Sales Confirmations:  one each to Allstate, Santa's Own, and Direct Export.

-6-

Reinforcing its assertion of only limited sales, Special Happy also stated that it had no drawings or other technical information concerning the accused products. (*Id*.)

14.    However, in May 2010, Lincoln Imports subpoenaed Special Happy's customer Allstate to verify Special Happy's limited sales. Surprisingly, records obtained from this customer in August 2010 indicated that Special Happy was withholding records for over 99.7% of its sales just to this one customer. In response to Lincoln Imports' request for records of sales and shipments of Special Happy trees which included a Collpasible Christmas Tree Stand, this one customer identified 399 different tree models and sales made throughout the period January 2003 through July 2009. (*Id*.)

15.    At the October 5, 2010 hearing on Defendant's Motion to Compel (Dkt. Nos. 26-28) before Magistrate Judge Goldman, I read the following stipulation of counsel into the record:

> Special Happy will produce the requested sales and technical information with two added limitations: . . .
>
> 1 . It need not produce documents or information from prior to <u>January 16, 2003</u>. . . .
>
> [2.] The phrase "Collapsible Christmas Tree Stand" shall mean any stand or device for supporting a Christmas tree which has (1) a central tube or sleeve for supporting the trunk or pole of the tree; (2) <u>a collar mounted around the tube or sleeve</u>; (3) two pairs of legs that are rotatable relative to each other about the central tube or sleeve; (4) a <u>lock or screw</u> for locking the legs relative to each other.

-7-

Exhibits to Lincoln Imports' Motion for Sanctions page 8 of 768

(emphasis added.)

16.    In its earlier interrogatories and requests for production, Lincoln Imports had sought documents and information generated after March 1, 1993 (interrogatories) and July 14, 2002 (requests for production). In its interrogatories and requests for production, Lincoln Imports had also more broadly defined "Collapsible Christmas Tree Stand" as follows:

> The phrase "Collapsible Christmas Tree Stand" shall mean any stand or device for supporting a Christmas tree which has: (1) a central tube or sleeve for supporting the trunk or pole of the tree; (2) two pairs of legs that are rotatable relative to each other about the central tube or sleeve; and (3) a mechanism for releasably locking the legs relative to each other.

(Emphasis added.)

17.    On October 19, 2010, Special Happy responded to this Court's Order compelling discovery, and served supplemental responses to Lincoln Imports' discovery. Special Happy's supplemental responses (1) provided an identification of only ten Special Happy's products which include a collapsible Christmas tree Stand; (2) provided information for the same 25 total sales as were originally disclosed; and (3) enclosed a one-page hand drawing, a patent, and an instruction sheet comprising the sum total of all "technical information" for its products. (*See* Ex. S.)

18.    Including Special Happy's original 52 pages of document production, its cumulative document production in this case now consists of only 133 total pages.

-8-

Exhibits to Lincoln Imports' Motion for Sanctions page 9 of 768

19.    With 133 total pages of document production and scant "technical information," Lincoln Imports had no ready means to verify the completeness of Special Happy's compelled discovery responsive to this Court's Order of October 5, 2010.  Special Happy had no known Internet web site and had produced no product catalogs or other form of descriptive product literature or product lists.  Moreover, none of Special Happy's known or disclosed products are branded or labeled as a "Special Happy" product.  Rather, all of its known products are re-branded by its various distributors, which makes it even more difficult to find Special Happy's products in the market.  Lincoln Imports was therefore forced to undertake a detailed independent investigation to determine whether Special Happy had even minimally complied with this Court's October 5, 2010 Order.

20.    Using partial product numbers, cryptic product descriptions, partial catalogs and records subpoenaed from Allstate, and customer names obtained from the few shipping records actually produced by Special Happy in this case, Lincoln Imports located approximately 20 Internet merchants who currently carried products imported by Special Happy under various brand names.

21.    Lincoln Imports also searched publicly available shipping records to uncover Special Happy's shipments and customers in the United States since July 1, 2007.[1]    As discussed in more detail below, the results of Lincoln Imports

---

[1]    Although Special Happy has acknowledged selling its products since 2001, public records for shipments before July 1, 2007 were not available.

-9-

Exhibits to Lincoln Imports' Motion for Sanctions page 10 of 768

investigation show that Special Happy has failed to identify and withheld all information for all of its sales of accused products to 56 out of its 59 recent customers, and withheld information for over 99% of its sales (including sales by Special Happy's three disclosed customers).  (Exs. H, I.)  A summary of Lincoln Imports' investigation is shown in attached Exhibits F-R.

22.    The results of Lincoln Imports' investigation shown in exhibits F-R was previously provided to Special Happy with the hope that a motion for sanctions would be unnecessary and that mediation undertaken in December 2010 would resolve the parties' dispute.  Regrettably, mediation was unsuccessful and Special Happy has continued to withhold practically all of its Compelled Discovery.

23.    During the period July 1, 2007 through October 20, 2010, Special Happy failed to identify or produce any information or documents regarding shipments, sales, costs, or profits associated with 56 out of its 59 customers.  During this period, Special Happy made 262 shipments comprising 224,187 cartons, totaling 3.5 million kilograms (7.7 million pounds) just to these 56 undisclosed customers.  (Ex. G, Special Happy Largest Customers; Ex. H, Special Happy Shipments by Customer.)  A further investigation of only five of these undisclosed customers clearly indicated that at least 799 of their current products include a Special Happy collapsible Christmas tree stand.  (Ex. O, Vickerman Products; Ex. Q, Kurt S. Adler Products; Ex. R, Products by Other Undisclosed Customers.)

-10-

24.    In addition, based on the limited shipping records actually provided by Special Happy, Lincoln Imports estimates that Special Happy has sold approximately 170,000 trees just to these 56 undisclosed customers since January 16, 2003.  (Ex. H, Special Happy Shipments by Customer; Ex. I, Special Happy Total Sales Estimates; Ex. J, Special Happy Tree Weight Analysis.)

25.    Special Happy has failed to produce any documents disclosing the cost or profit associated with any of its products which incorporate a collapsible Christmas tree stand, as sought in Lincoln Imports' requests for production 12 and 13 (which were the subject of this Court's October 5, 2010 Order).  This applies to Special Happy's 3 disclosed customers, as well as its 56+ undisclosed customers.

26.    Special Happy has failed to produce any physical specimens of any of its collapsible Christmas tree stands, as sought in Lincoln Imports' request for production 31 (also the subject of this Court's October 5, 2010 Order).  This applies equally to Special Happy's 56+ undisclosed customers, as well as its 3 disclosed customers and its.

27.    Lincoln Imports' independent investigation reveals that Santa's Own is Special Happy's largest single United States customer (receiving almost 25% of all Special Happy's imports by weight.  (Ex. G, Special Happy Largest Customers; Ex. H, Special Happy Shipments by Customer.)  Further, the shipping records obtained by Lincoln Imports indicate that Special Happy shipped over 90% of all of the

-11-

product shipments imported by Santa's Own since July 1, 2007. From July 1, 2007, Special Happy made 168 shipments of 70,247 cartons totaling 1,612,858 kilograms (over 3.5 million pounds) just to Santa's Own. (Ex. H, Special Happy Shipments by Customer.) This amounts to an estimated 50,000+ trees since July 1, 2007 and 100,000+ trees since January 2003. (Ex. I, Special Happy Total Sales Estimates; Ex. J, Special Happy Tree Weight Analysis.)

28. During Lincoln Imports' investigation, Santa's Own website (santasown.com) displayed 377 tree models. Of these 377 tree models, 370 current models (98%) clearly appear to include a collapsible Christmas tree stand, the vast majority of which are identical to the stand supplied by Special Happy with the PP75PKLPK product! (Ex. L, Santa's Own Products; Ex. M, Santa's Own Tree Stand Instructions.) During discovery and in response to this Court's October 5, 2010 Order, Special Happy failed to identify 370 of these current tree models, and failed to produce any records of shipping, sales, cost, or profit for these 370 products.

29. Lincoln Imports' independent investigation reveals that Direct Export is Special Happy's second largest United States customer. The shipping records obtained by Lincoln Imports show that, since July 1, 2007, Special Happy made 173 shipments of 50,147 cartons totaling 872,820 kilograms (over 1.9 million pounds) to Direct Export. (Ex. H, Special Happy Shipments by Customer.)

-12-

Exhibits to Lincoln Imports' Motion for Sanctions page 13 of 768

30.     An analysis of the only complete and unredacted shipping record ever provided by Special Happy in this case indicates that this one shipment to Direct Export comprised approximately 50% by weight of trees, at an average weight of about 20 kilograms each.  (Ex. J, Special Happy Tree Weight Analysis.)  This suggests that Special Happy has shipped 22,000 trees to Direct Export since July 1, 2007 and 44,000 trees since January 2003.

31.     While Direct Export has an Internet website, this website does not identify or depict any of Direct Export's Christmas tree products.  However, several other Internet merchants display at least 37 current Direct Export products which clearly include a Special Happy collapsible Christmas tree stand, the vast majority of which are identical to the stand supplied by Special Happy with the no. 173076 product that was admitted by Special Happy to include such a stand.  (Ex. N, Direct Export Products.)  Special Happy has failed to identify any of these other tree models, or produce any corresponding records of shipping, sales, cost, or profit for any of these products.

32.     In Exhibit A to the Compelled Discovery, Special Happy identified seven additional Allstate products (in addition to product no. Y8E175-GR) which include a collapsible Christmas tree stand.  (Ex. S.)

33.     However, Special Happy failed to produce any records for shipping, sales, cost, or profits even for any of the foregoing seven additional products which

-13-

were <u>admitted</u> to include a collapsible Christmas tree stand.

34.    More importantly, Special Happy has failed to identify or produce shipping, sales, cost, or profits records for the <u>399 Special Happy tree models</u> and identified by Allstate as including a collapsible Christmas tree stand.[2]  Here, Lincoln Imports' independent investigation confirmed that at least 49 current Special Happy products distributed by Allstate include a collapsible Christmas tree stand.  (Ex. P, Allstate Products.)  Of these products, 36 were confirmed to have the *same tree stand* as the Y8E175-GR product that was admitted by Special Happy to include a collapsible Christmas tree stand.  Special Happy failed to identify any of these products and failed to produce any associated records of shipments, sales, costs, or profits.

35.    I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed within the United States on January 5, 2010.

/s/ Thomas L. Warden
Thomas L. Warden

---

[2] Allstate disclosed these products in August 2010 in response to a subpoena *duces tecum* served by Lincoln Imports.

-14-

Exhibits to Lincoln Imports' Motion for Sanctions page 15 of 768