O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

SPECIAL HAPPY, LTD.,

    Plaintiff/Counterdefendant,

        v.

LINCOLN IMPORTS, LTD, INC.,

    Defendant/Counterclaimant.

Case No. SACV 09-00074-MLG

ORDER GRANTING DEFENDANT LINCOLN IMPORT'S MOTION FOR ENTRY OF DEFAULT AS A TERMINATING SANCTION

## I.  Background

This matter is before the Court on the motion of Defendant and Counter-claimant Lincoln Imports, Ltd., Inc. ("Lincoln") for entry of default as a terminating sanction [Doc #65] against Plaintiff and Counter-defendant Special Happy, Ltd. ("Special Happy"), [Doc #65] based upon Special Happy's litigation misconduct during discovery and its continued violation of the Court's orders. Lincoln seeks dismissal of the complaint, entry of default judgment on its counter-claim, as well as an award of damages, injunctive relief, attorneys' fees, and costs.

Special Happy is a China based manufacturer of artificial Christmas trees and distributes its products throughout the United

States. (Compl. ¶¶ 10, 11, 19, 22-24, Dkt. No. 1.) Lincoln is a California corporation with its offices in Placentia, California. Lincoln is a wholesale distributor of home decor items, including artificial Christmas trees. (Def.'s Countercl., ¶ 6, Dkt. No. 12.) On January 15, 2009, Special Happy filed this action, alleging that Lincoln had interfered with Special Happy's sales of artificial Christmas trees by sending cease and desist letters to Special Happy customers, claiming that certain trees distributed by Special Happy violated Lincoln's United States Patent No. Re. 36,640 ("the '640 patent").[1] Special Happy also sought a declaratory judgment that its artificial Christmas trees do not infringe the '640 patent. (Compl. ¶¶ 2-3, 10-11, 19-20, 52-61.) Lincoln asserted a counterclaim against Special Happy for infringement of the '640 patent. (Def.'s Countercl., ¶¶ 6-19.)

During discovery, Lincoln requested technical and sales information with respect to all of Special Happy's Christmas trees having a collapsible tree stand, as claimed by the '640 patent. In response to Lincoln's discovery requests, Special Happy produced no technical information and only 52 total pages of documents, which showed that it made only 3 sales consisting of 25 trees in 2007 and 2008. (Def.'s Mot. for Sanctions, Ex. A, Warden Decl., ¶¶ 13, 17, Dkt. No. 35.)

Given these scant numbers, Lincoln suspected that Special Happy had not fully complied with its discovery obligations. In May 2010, Lincoln issued subpoenas to two of Special Happy's three identified

---

[1] The '640 patent claims a collapsible Christmas tree stand with rotatable legs which facilitate compact storage. (Def.'s Countercl., Ex. 1, '640 patent, Abstract.) Two pairs of legs are mounted on a tube and a sleeve, and locked in place with an eye bolt. (*Id.*, Fig. 1.)

customers in order to determine if there were any sales that Special Happy had not reported. In response to the subpoena, one of these customers identified 399 different artificial Christmas tree models with collapsible tree stands and many thousands of purchases from Special Happy during the period between January 2003 and July 2009. This information revealed that Special Happy had withheld evidence of over 99.7% of its sales just to this single customer. (*Id.* ¶ 14.)

On August 25, 2010, after attempts to obtain Special Happy's voluntary compliance with its discovery requests, Lincoln prepared and served a Local Rule 37-2 Joint Stipulation regarding Special Happy's deficient discovery responses. (Warden Decl. at 2, ¶ 4; Joint Stip., Dkt. No. 27.) Special Happy refused to join in the submission of the Joint Stipulation. (*Id.* at 2, ¶ 4.) On September 7, 2010, Lincoln filed a motion to compel further responses to its discovery requests. (Dkt. Nos. 26-28.)

On October 5, 2010, a hearing was held and the Court granted Lincoln's motion to compel. (Dkt. No. 30.) Special Happy was ordered to produce all of the requested discovery no later than October 15, 2010.

On October 19, 2010, Special Happy served supplemental discovery responses. However, Special Happy again refused to identify or produce records for any of its sales beyond its original three sales of 25 total products. (Def.'s Mot. for Sanctions, Ex. A, Warden Decl. at 8, ¶ 17.)

In October and November 2010, Lincoln conducted a rigorous and costly independent investigation to determine whether Special Happy had complied with the October 5, 2010 order. (*Id.* at 9, ¶ 19.) Lincoln eventually located approximately 20 internet merchants who

carried Christmas trees with collapsible stands imported and distributed by Special Happy under various brand names. Using this information, customs records, and public shipping records, Lincoln discovered 56 previously undisclosed customers, over 1,500 undisclosed products, and over 300,000 undisclosed sales. (*Id.* at 9-14, ¶¶ 20-24, 27-34, Exs. G-T.)

In November 2010, Lincoln provided the results of its investigation to Special Happy, in the hope that Special Happy would comply with its discovery obligations and eliminate the need to file a motion for sanctions. (*Id.* at 10, ¶ 22.) Instead, that same month, Special Happy formed a new Hong Kong corporation known as "Happy Trend Corporation Ltd." (Def.'s Mot. for Default, Ex. 2-4.) Special Happy and Happy Trend share the same office and have the same directors and shareholders. (*Id.*) Based upon information received from one of Special Happy's current customers, its appears that Special Happy has reorganized and formed Happy Trend because of the present lawsuit.

On January 10, 2011, Lincoln filed a motion for sanctions. (Dkt. Nos. 32, 35-40, 44, 46, 47.) Lincoln requested an order finding that there had been, at minimum, 300,000 infringements of the '640 patent, as well as an award of its attorneys' fees and costs for the third party discovery, for its motion to compel and motion for sanctions, and for its independent investigation. (Def.'s Mot. for Sanctions at 18-19.)

On January 25, 2011, a hearing was held on Lincoln's motion for sanctions. At the hearing, Special Happy's counsel acknowledged that his client had not complied with the Court's discovery order. Special Happy's counsel also candidly admitted that his client had no

intention of complying with the Court's orders or satisfying any judgment entered against it in this action because the company was located in China.

On February 4, 2011, the Court granted Lincoln's motion for sanctions. The Court sanctioned Special Happy for its willful failure to comply with the Court's previous Order by awarding Lincoln its costs and attorneys' fees, and by making an evidentiary finding that Special Happy had imported a "minimum of 300,000 collapsible Christmas tree stands." (Order Granting Mot. for Sanctions, Dkt. No. 52.) However, Lincoln's request for an evidentiary finding that these 300,000 imports infringed the '640 patent was denied. (*Id.*)

On February 10, 2011, Lincoln filed a bill of attorneys' fees and costs that it had incurred in connection with the third party discovery during May 2010, its motion to compel in September and October 2010, its independent investigation in October and November 2010, and its motion for sanctions in January 2011. (Dkt. No. 54.) Lincoln sought a total award of fees and costs in the amount of $108,692.58. (*Id.*, Warden Decl. at 5, ¶ 17.)

On February 24, 2011, an order was entered awarding partial sanctions. (Dkt. No. 56.) Special Happy was ordered to pay $25,000 for Lincoln's attorneys' fees and expenses no later than March 10, 2011. The order stated Lincoln's remaining request for attorneys' fees and expenses would be resolved during trial, which was set to begin on April 19, 2011. Special Happy was specifically warned that the "[f]ailure to comply with this order may result in the imposition of additional sanctions, including terminating sanctions."

//

//

On April 8, 2011, the parties appeared for the final pretrial conference. When questioned whether Special Happy had complied with the order to pay the $25,000 sanction, Special Happy's counsel acknowledged that his client had not paid the sanction and had no intention of doing so. Special Happy's counsel also stated that none of Special Happy's witnesses would be appearing for trial. Rather, Special Happy would be merely cross-examining Lincoln's witnesses. Lincoln requested that the Court enter a default judgment against Special Happy as a terminating sanction for its violations of the Court's orders.

An order was issued finding that it was "clear from Plaintiff's repeated discovery violations and violations of the Court's orders that Plaintiff does not intend to comply with any adverse orders entered by the Court." (Dkt. No. 62.) Accordingly, the Court took the trial off calendar, found that terminating sanctions were appropriate, and struck Special Happy's complaint. (Dkt. No. 62.)

The Court also requested briefing by Lincoln regarding whether it had standing to maintain its claims for patent infringement. Special Happy contended that Lincoln was not properly assigned rights to the '640 patent and therefore had no standing to enforce the patent.[2] The Court also ordered Lincoln to brief the issue "whether under Ninth Circuit law, terminating sanctions may include a finding that the accused products infringe the '640 patent and an award of money damages and injunctive relief; or whether a factual finding must be made, either by way of a ... Federal Rule of Civil Procedure 56 motion or testimony, that the accused products infringe the '640

_____

[2] Special Happy did not assert that their trees with collapsible stands did not fall within the claims of the '640 patent.

6

patent." (*Id.*)

## II.  Lincoln Has Standing to Assert Infringement of the '640 Patent

As a threshold matter, it must be determined whether Lincoln has standing to assert infringement of the '640 patent. Special Happy contends that Lincoln lacks standing because it was never validly assigned the rights to the '640 patent. More specifically, Special Happy argues that Lincoln's written assignment document does not actually assign the '640 patent, but rather assigns a different design patent. Special Happy bases this contention on the fact that the '640 patent assignment agreement makes reference to a "design patent" in the header and in two "whereas" clauses. Because the '640 patent is a utility patent, not a design patent, Special Happy argues that the assignment covers a different patent, and Lincoln therefore has no legal title to the '640 patent and no standing to sue for infringement. (Compl. at 13-15, ¶¶ 30-32.)

Lincoln acknowledges that the assignment form makes reference to a "design patent," but contends that this is merely a typographical error and that the particularized identifying information in the assignment is sufficient to render the assignment clear and unambiguous. Lincoln notes that the assignment correctly describes the original application for the '640 patent by referencing both of the co-inventors' names, the exact title of the invention, and the date that the patent application was executed. (Def.'s Mem. of P & A in Supp. of Standing to Assert '640 Patent at 9-10.)

Standing is a necessary element of federal-court jurisdiction under Article III of the Constitution. *See City of South Lake Tahoe v. California Tahoe Regional Planning Agency*, 625 F.2d 231, 233 (9th

Cir. 1980) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). A threshold question in every federal case is, therefore, whether at least one plaintiff has standing. *Id.* (citing *Construction Indus. Ass'n of Sonoma County v. City of Petaluma*, 522 F.2d 897, 903 (9th Cir. 1975)). The issue of standing is a jurisdictional requirement and cannot be waived by a party's failure to raise the issue. *See Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001) (citing *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468 (1926)). A court may also resolve issues of standing *sua sponte*. *See South Lake Tahoe*, 625 F.2d at 233-34.

The Patent Act provides that a "patentee may have remedy by civil action" for infringement of its patent. 35 U.S.C. § 281. Section 100(d) of the Act defines "patentee" as including "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). Thus, "an assignee [of a patent] is the patentee and has standing to bring suit for infringement in its own name." *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998). To permit an assignee to sue for infringement in its own name, the assignment must convey to the assignee an entire undivided interest in the patent. Anything less generally constitutes a license. *Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996).

Under 35 U.S.C. § 261, "[a]pplications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." However, the construction or interpretation of patent assignments is governed by state contract law. *Tri-Star Electronics Intern., Inc. v. Preci-Dip Durtal SA*, 619 F.3d 1364, 1367 (Fed. Cir. 2010). To determine whether a provision in an agreement constitutes

an assignment or a license, one must ascertain the intention of the parties and examine the substance of what was granted. "An assignment of an interest in an invention secured by letters-patent, is a contract, and like all other contracts is to be construed so as to carry out the intention of the parties to it." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 874 (Fed. Cir. 1991) (citing *Nicolson Pavement Co. v. Jenkins*, 81 U.S. (14 Wall.) 452, 456 (1871)). Under California law, which is applicable here, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636.

Patent regulations require that an assignment of a patent application which is executed before the application is filed, as is the case here, identify the application by including the name of each inventor and the title of the invention "so that there can be no mistake as to the patent application intended." 37 C.F.R. § 3.21. The assignment agreement at issue here complies with this requirement, clearly naming the two inventors names, David Frost and Matthew Leung; the title of the invention, a "Collapsible Christmas Tree Stand;" and a statement that the agreement is executed the same date as the patent application, February 3, 1993. (Def.'s Mem. of P & A in Supp. of Standing to Assert '640 Patent, Ex. 7.)

Special Happy's claim that the assignment is for a different design patent is without merit. It is clear that the co-inventors intended to assign all rights in the '640 patent to Lincoln. An examination of the patent application, a description of the collapsible Christmas tree stand, the contested assignment agreement,

and the '640 patent reveals that they all share the same attorney's docket number (1624L), serial number (015,542), and/or execution date (February 3, 1993). (*See* Def.'s Memorandum, Exs. 1, 2, 7.) Thus, despite a typographical error which mistakenly refers to a "design patent," rather than a utility patent, it is clear that the assignment unambiguously assigns to Lincoln the '640 patent, rather than some other "design patent," as Special Happy claims.

The existence of a good faith clerical mistake in an assignment will not defeat an assignee's standing to pursue an infringement claim. The very same standing argument advanced by Special Happy regarding the typographical error in the assignment of the '640 patent has been previously considered and rejected in the Southern District of Texas, based upon the same evidence that is before this Court. *See Lincoln Imports, Ltd., Inc. v. Santa's Best Craft, Ltd.*, 2008 WL 2754530, *1-*2 (S.D. Tex. 2008)(denying accused infringer's motion to dismiss for lack of standing where plaintiff showed that reference to a design patent was a typographical mistake and that the agreement provided other indicia that the asserted patent was indeed the subject patent of the assignment); *See also Speedplay, Inc. v. Beebop, Inc.*, 311 F.3d 1245, 1250-51 (Fed. Cir. 2000) (discerning parties' intent to license the patent-in-suit, despite a "scrivener's error" in referencing an incorrect patent number). Accordingly, it is clear Lincoln has standing to assert infringement of the '640 patent.

//
//
//
//

**III. Lincoln Is Entitled to Entry of Default as a Terminating Sanction for Special Happy's Discovery Abuses and Repeated Violations of the Court's Orders**

Federal Rule of Civil Procedure 37(b)(2)(A)(vii) authorizes a district court, in its discretion, to enter default judgment against a party who violates a discovery order. Such a sanction is "severe" and only justified upon a showing of "willfulness, bad faith, or fault" of the disobedient party. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003)). "Disobedient conduct not outside the control of the litigant meets this standard." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002). Here, Special Happy has wilfully disobeyed this Court's orders and its actions throughout discovery were within its control.

The Court must weigh five factors when considering a motion for terminating sanctions: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1096 (quoting *Jorgensen*, 320 F.3d at 912). Rather than being a "series of conditions precedent" or "script," these factors provide courts with a framework for analysis. *Id*. Ultimately, "[t]he most critical factor to be considered in case-dispositive sanctions is whether 'a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.'" *Id*. at 1097 (quoting *Valley Eng'rs*

*v. Electric Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998)).

Where, as here, a court order has been violated, the first two factors tip in favor of default and the fourth factor cuts against default. *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004). Therefore, the risk of prejudice to Plaintiff and the availability of less drastic sanctions against Defendant are the critical factors in this case. *Id*.

**A.    Prejudice**

Prejudice to the moving party exists if the non-moving party's discovery abuses "impair the [moving party's] ability to go to trial or threaten to interfere with the rightful decision of the case." *In re Phenylpropanolamine (PPA) Prods. Liab. Litiga.*, 460 F.3d 1217, 1227 (9th Cir. 2006) (quoting *Adriana Int'l Corp. v. Thoeron*, 913 F.2d 1406, 1412 (9th Cir. 1990)). Here, Special Happy's behavior has deprived Lincoln of the ability to establish even the most basic facts with any certainty, thereby interfering with Lincoln's ability to litigate its case on the merits.

Special Happy's obstructive behavior and willful violations of its discovery obligations and the Court's orders have significantly prejudiced Lincoln. As noted, Special Happy disclosed only three customers and 25 infringing sales for all of 2007 and 2008. Despite the Court's order to supplement its document production, Special Happy failed to produce any additional documents, including any financial data which is key to determining the proper amount of damages in this case. Consequently, Lincoln was forced to expend significant time and money trying to ascertain the actual number of customers and sales of the alleged infringing products, which resulted in the discovery of over 300,000 undisclosed sales. It is

entirely unclear how many more customers and sales Special Happy may have withheld from discovery. Those facts will never be known or come out at trial due to Special Happy's misconduct. Lincoln has demonstrated sufficient prejudice to warrant terminating sanctions. *See Adriana Int'l Corp.* 913 F.2d at 1412 ("Failure to produce documents as ordered [] is considered sufficient prejudice.").

Ultimately, Special Happy's conduct during discovery was calculated to hinder Lincoln's ability to proceed to trial, and Special Happy has succeeded in doing so. *See Computer Task Grp., Inc.*, 364 F.3d at 1116 ("There can be no doubt that [defendant's] baseless two year fight against each and every discovery request and court order has been conducted willfully and with the intent of preventing meaningful discovery...[making it] impossibly for [Plaintiff] to proceed to any imaginably fair trial.") At the close of discovery, Lincoln is no closer to learning the key discoverable facts that would result in a fair trial. Accordingly, the risk of prejudice weighs in favor of terminating sanctions.

### B. Availability of Less Drastic Sanctions

Because less drastic sanctions would not remedy Special Happy's discovery abuses, this factor also cuts in favor of terminating sanctions. *See Conn. Gen. Life Ins. Co.,* 482 F.3d at 1096-97. The Court has already considered and tried alternative lesser sanctions, to no avail. Initially, it was ordered that documents be produced. Next, the Court imposed the lesser sanction of ordering Special Happy to pay Lincoln's attorney's fees in the partial amount of $25,000 and by making an evidentiary finding that Special Happy had imported "a minimum of 300,000 collapsible Christmas tree stands." (Dkt. Nos. 52, 56.) As noted, Special Happy refused to pay the $25,000 award by the

due date of March 10, 2011. At that hearing, counsel for Special Happy informed the Court that his client had no intention of ever paying the $25,000 sanction nor any other sanction imposed.

Special Happy was explicitly warned of the serious consequences of its failure to comply with its discovery obligations and the Court's orders. When the Court issued its order awarding partial payment of sanctions for Special Happy's discovery abuses, Special Happy was specifically warned that the "[f]ailure to comply with this order may result in the imposition of additional sanctions, including terminating sanctions." (Dkt. No. 56.) Notwithstanding, Special Happy did not alter its contumacious conduct. *See Conn. Gen. Life Ins.*, 482 F.3d at 1095 (warning the recalcitrant party about the possibility of case-dispositive sanction is one factor to consider in determining whether less drastic sanctions are available).

Special Happy's misconduct has insured that the parties will never have access to the true facts. *Id.* at 1097. Moreover, the Court has no indication that Special Happy's pattern of willfully obstructing discovery and violating the Court's orders will cease. Indeed all evidence, including the statements of Special Happy's attorney, reveal that the misconduct will only continue. *See Anheuser-Busch, Inc. v. Natural Beverage Distrib.*, 69 F.3d 337, 352 (9th Cir. 1995) ("It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct.").

In sum, because less drastic sanctions have previously failed and lesser sanctions would not remedy Special Happy's misconduct, this factor weighs in favor of granting Lincoln's motion for a default judgment.

//

**IV. Lincoln Is Entitled to a Default Judgment Finding That Special Happy Infringed the '640 Patent, As Well As an Injunction and Award of Attorney's Fees and Costs**

Entry of default judgment is governed by Fed. R. Civ. P. 55 and is left to the trial court's sound discretion. *Philip Morris USA, Inc. v. Castworld Products,* Inc., 219 F.R.D. 494, 498 (C.D.Cal. 2003) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)). The Ninth Circuit has held that a district court may consider the following factors in exercising its discretion to award a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Fed. R. Civ. P. 55(b)(2) provides that a "court *may* conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." (Emphasis added.) Thus, "Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

"With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in

the complaint regarding liability are deemed true." *Fair Housing of Marin*, 285 F.3d at 906. The district court is not required to make detailed findings of fact. *Id.* (citing *Adriana Int'l Corp.*, 913 F.2d at 1414). A party seeking a default judgment must state a claim upon which it may recover and Plaintiff is required to prove all damages sought in the complaint. *PepsiCo Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1175 (C.D.Cal. 2002) (citing *TeleVideo Sys.*, 826 F.2d at 917-18). In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2).

A court may enter a default judgment of patent infringement as a sanction for an accused infringer's discovery abuses. *See, e.g., Monsanto Co. v. Ralph*, 382 F.3d 1374, 1380-82 (Fed. Cir. 2004) (entering liability verdict in favor of patentee based on accused infringer's intentional violation of court's discovery order and spoilation of evidence); *Global Traffic Technologies, LLC v. Tomar Electronics,* Inc., 2007 WL 4591297, *8-9 (D. Minn. Dec. 27, 2007) (entering default judgment against accused infringer based on willful violations of court's orders); *cf. Cintec Int'l. Ltd. v. Parkes*, 468 F.Supp.2d 77 (D.D.C. 2006) (in a declaratory judgment action where patentee counterclaimed for infringement, court granted default judgment of noninfringment, invalidity and unenforceability as a sanction for patentee's willful failure to comply with discovery orders).

Furthermore, the Court is not required to hold a hearing in order to find that Special Happy has infringed the '640 patent. *See Massa v. Jiffy Products Co.*, 240 F.2d 702, 706-07 (9th Cir. 1957) (in action on cross-complaint for declaration as to invalidity of patent,

there was no abuse of discretion by the trial court in entering a default judgment declaring the patent to be invalid without taking further proof). Here, liability is established by taking as true the factual allegations of Lincoln's counterclaim.

Pursuant to 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 284 provides, "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court. When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed."

In addition, the court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Finally, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. A case may be found "exceptional" in terms of the statute governing attorney fees in patent cases when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, or vexatious or unjustified litigation. *Aspex Eyewear Inc. v. Clariti Eyewear*, *Inc.*, 605 F.3d 1305 (Fed. Cir. 2010).

//

Lincoln's counterclaim for patent infringement asserts the following: The '640 patent was duly and lawfully issued by the U.S. Patent and Trademark Office directly to Lincoln as the assignee, and Lincoln owns all right, title and interest in and to the '640 patent. (Def.'s Countercl. at 13, ¶¶ 7, 8.) Special Happy manufactures products that include a collapsible Christmas tree stand encompassed by the claims of the '640 patent. (*Id.* at 14, ¶ 11.) Special Happy imports, sells and offers to sell the infringing products within the United States. (*Id.* ¶¶ 12-13.) Special Happy's importation and sales of the infringing product were made without Lincoln's authorization and were made with knowledge of the '640 patent. (*Id.* at 14-15, ¶¶ 14, 16.) Therefore, Special Happy's importation and sales of these products infringes claims 1, 4, 5, 20-22, 30, and 34 of the '640 patent, and the infringement was willful. (*Id.* at 15, ¶¶ 17, 18.) Lincoln has suffered damages due to Special Happy's infringement in an amount no less than a reasonable royalty. (*Id.* ¶ 19.)

Lincoln's counterclaim further asserts that its offices are located in Placentia, California, and that it is a wholesaler of home decor items, including artificial Christmas trees. (*Id.* at 12-13, ¶¶ 2, 6.) Thus, Lincoln asserts that Special Happy's importation and sales of the infringing products is irreparably harming and causing damage to Lincoln, and will continue to do so unless and until enjoined by the Court. (*Id.* at 15, ¶ 20.)

The issue of damages for Special Happy's infringement of the '640 patent may be established by motion on the written record. In this case, the Court has already found that Special Happy has imported a minimum of 300,000 products that include a collapsible Christmas tree stand. (Order Granting Mot. for Sanctions, Dkt. No.

52.) Lincoln has agreed to waive its right to prove additional sales of infringing products. Accordingly, because Special Happy has previously stipulated that $1.50 per unit is a reasonable royalty, the total amount of Lincoln's damages can be easily determined based on the written record. Thus, Lincoln is entitled to damages in the amount of $450,000 as a reasonable royalty under 35 U.S.C. § 284.

The Court further finds that Lincoln is entitled to injunctive relief. Therefore, Lincoln shall submit a proposed order for injunctive relief no later than July 27, 2011, for the Court's review.

The Court further finds that Lincoln is entitled to an award of attorneys' fees, both for the remaining time Lincoln expended in its investigation and motion practice, and as the prevailing party in the underlying action. Lincoln previously submitted a statement of its attorneys' fees and costs arising from the third party discovery, costs of investigation, and motion practice that resulted from Special Happy's failure to comply with discovery and with the Court's October 5, 2010 order. (Docket No. 54.) In that motion, Lincoln requested an award of attorneys' fees and costs in the amount of $108,692.58. The Court awarded a partial payment of sanctions in the amount of $25,000. (Docket. No. 56.) Based upon Special Happy's discovery abuses and repeated failure to comply with the Court's orders, as discussed in detail above, the Court finds that an award of $108,692.58 to Lincoln for its attorneys' fees and costs relating to discovery is appropriate.

The Court further finds that Lincoln is entitled to an award of attorneys' fees and costs as the prevailing party in this action. The awarding of attorney fees in patent cases pursuant to 35 U.S.C. § 285

is governed by Federal Circuit law. *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 (Fed. Cir. 2001). A court may award reasonable attorney fees to prevailing parties under § 285 if it finds, by clear and convincing evidence, that the case is "exceptional." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008) (citing *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989)). Criteria for declaring a case exceptional include willful infringement, bad faith, litigation misconduct, and unprofessional behavior. *nCube Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1319 (Fed. Cir. 2006) (citing *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996)). Here, Special Happy's serious litigation misconduct, bad faith, and unprofessional behavior makes this case exceptional within the meaning of 35 U.S.C. § 285. Therefore, Lincoln is entitled to its reasonable attorney fees as the prevailing party.

In determining the amount of attorneys' fees to be awarded, the Court will allow Lincoln to submit declarations and documents supporting its claim for attorneys' fees and costs. Special Happy will also be permitted to contest the reasonableness of the amount requested. Therefore, Lincoln shall file a complete record of attorneys' fees and costs expended in defending Special Happy's patent claims no later than July 27, 2011. Special Happy shall file its response, if necessary, no later than August 5, 2011.

Finally, the Court finds that Lincoln is not entitled to enhanced damages. A plaintiff is entitled to enhanced damages if the defendant willfully infringed the patent. 35 U.S.C. § 284. Enhanced damages may be awarded upon a finding of willful infringement or bad faith, which requires a showing of objective recklessness. *In re*

*Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). A patentee must make a showing of objective recklessness "by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* Here, Lincoln has not made any showing that Special Happy wilfully infringed the '640 patent or that Special Happy acted in bad faith with respect to the infringement.

In sum, Lincoln is entitled to an award of $450,000 in damages, injunctive relief, an award of attorneys' fees and costs in the amount of $108,692.58 incurred in investigating and filing its motion to compel discovery, and an award of attorneys' fees and costs as the prevailing party in this action in an amount to be determined by the Court. Lincoln is not, however, entitled to an award of enhanced damages.

## V.   Conclusion

The case-dispositive sanction factors weigh strongly in favor of terminating sanctions. Indeed, the only factor weighing against such sanctions is the public policy favoring disposition of cases on the merits. However, it is Special Happy's own willful behavior that has obscured the facts and impeded Lincoln's efforts to proceed to the merits.

//
//
//
//
//
//

1    For these and the foregoing reasons, Lincoln's motion for
2  terminating sanctions is hereby granted. Upon entry of the order for
3  injunctive relief and a determination of the additional attorney fees
4  and costs, judgment shall be entered for Lincoln on the complaint and
5  on its counter-claim.

7  Dated: July 6, 2011

                                    _____
                                    Marc L. Goldman
                                    United States Magistrate Judge